**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED APRIL 28, 2011

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                                                    No. 140153

ANTHONY JAMES BREIDENBACH,

      Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

In *People v Helzer*,[1] this Court held that when a criminal defendant is charged with being a sexually delinquent person in relation to an underlying sexual offense, separate juries must determine a defendant's guilt of the sexual delinquency charge and the underlying charge. In this case, defendant was convicted by a single jury of "indecent exposure as a sexually delinquent person." The trial court granted defendant's motion for a new trial after the Court of Appeals vacated his conviction on the ground that the first

---

[1] *People v Helzer*, 404 Mich 410; 273 NW2d 44 (1978).

trial violated his procedural rights under *Helzer*. The prosecutor appealed, arguing that *Helzer* was wrongly decided.

We hold that because the sexual delinquency statute, MCL 767.61a, neither explicitly nor implicitly requires that a separate jury determine the issue of sexual delinquency apart from the primary offense, the *Helzer* Court erred when it created a *compulsory* rule to that effect. Because the *Helzer* rule lacks support in the language of the statute itself, determinations whether separate juries are needed should be made on a case-by-case basis in accordance with the Michigan Court Rules. We therefore overrule *Helzer* in part and make clear that separate jury trials under MCL 767.61a are discretionary, not mandatory. Should a trial court, in its discretion, determine that bifurcation is necessary in order to protect a defendant's rights or ensure a fair determination of guilt or innocence, it may empanel separate juries.

For the reasons stated below, we grant the prosecutor's application for leave to appeal, vacate the trial court's order granting defendant a new trial, and reinstate defendant's conviction.

## I. FACTS AND PROCEDURAL HISTORY

While on parole for a similar offense, defendant Anthony Breidenbach exposed himself to a woman at a public bookstore. Defendant was charged with "indecent exposure as a sexually delinquent person"[2] in the Genesee Circuit Court and tried before

---

[2] MCL 750.335a (indecent exposure); MCL 767.61a (sexual delinquency). MCL 750.10a defines a sexually delinquent person as

2

one jury without objection.  At trial, the prosecutor presented specific testimony related to two prior similar convictions, and defendant's parole officer testified regarding defendant's extensive criminal history, which included convictions for 21 prior sexual offenses, 16 of which were felonies.  The jury convicted defendant as charged, and the trial court sentenced him to a prison term of "one day to life in prison," pursuant to the indeterminate sentence provided by statute.[3]

Defendant appealed and moved to remand, arguing that the trial court had violated MCL 767.61a and *Helzer*, and that he had been denied the effective assistance of counsel. The Court of Appeals remanded the case to the trial court to allow defendant to move for a new trial on this basis,[4] and the trial court subsequently ruled that defendant was entitled to a new trial pursuant to *Helzer*.[5]  The prosecutor filed a delayed application for

---

> any person whose sexual behavior is characterized by repetitive or compulsive acts which indicate a disregard of consequences or the recognized rights of others, or by the use of force upon another person in attempting sex relations of either a heterosexual or homosexual nature, or by the commission of sexual aggressions against children under the age of 16.

[3] MCL 750.335a(2)(c) provides that "[i]f the person was at the time of the violation a sexually delinquent person, the violation is punishable by imprisonment for an indeterminate term, the minimum of which is 1 day and the maximum of which is life." Defendant was paroled on October 13, 2009.

[4] *People v Breidenbach*, unpublished order of the Court of Appeals, entered June 23, 2009 (Docket No. 288895).

[5] Despite having received the relief he requested, defendant refused to dismiss the appeal, resulting in a motion for guidance filed by his attorney that the Court of Appeals, in lieu of granting it, resolved by remanding the case for a new trial pursuant to the trial court's

3

leave to cross-appeal in the Court of Appeals, which the Court denied.[6]

The prosecutor now appeals in this Court, arguing that *Helzer* was wrongly decided and should be overruled, or, alternatively, that defendant waived any claim of error under *Helzer* by failing to object to the original decision to try his case before a single jury.

## II.  STANDARD OF REVIEW

This case requires that we determine whether MCL 767.61a requires trials by separate juries when a defendant is charged with being sexually delinquent.  Matters of statutory interpretation raise questions of law, which we review de novo.[7]

## III.  *PEOPLE v HELZER*

In *People v Helzer*,[8] this Court held that separate juries are required when a criminal defendant is charged both with a principal sexual offense and with being a sexually delinquent person.  In that case, the defendant was convicted by a single jury of two charges of gross indecency, and subsequently convicted by the same jury of being a sexually delinquent person at the time the acts occurred.[9]  Noting that a conviction of

---

order.  *People v Breidenbach*, unpublished order of the Court of Appeals, entered Nov 23, 2009 (Docket No. 288895).

[6] *People v Breidenbach*, unpublished order of the Court of Appeals, entered November 9, 2009 (Docket No. 294319) (denying the prosecutor's application for leave to cross-appeal).

[7] *People v Morey*, 461 Mich 325, 329; 603 NW2d 250 (1999).

[8] *Helzer*, 404 Mich 410.

[9] *Id.* at 414-415.

4

sexual delinquency "can be obtained only in conjunction with conviction on the principal charge," the Court stated that sexual delinquency is a matter of sentencing that is unrelated to proof of the principal charge.[10]

On the basis of this understanding, the *Helzer* Court held that in order to proceed fairly "against a defendant under this modified statutory scheme, the alternate nature of the sentence requires a hearing and record before a *separate* jury in cases where defendant does not waive jury trial."[11] The Court reasoned that the "substantial function and discretion of the jury in hearing the sexual delinquency charge, the high potential for automatic conviction were the original jury to hear the delinquency charge and the penalty of life imprisonment possible upon finding sexual delinquency all inform our order for separate jury consideration."[12] The Court further offered the following policy rationale as support for its decision:

> The trial court cannot predict at the outset whether a defendant will actually be prejudiced by having the same jury decide both the principal charge and the sexual delinquency charge. However, the potential for prejudice is inescapable, given the broad function and wide discretion necessarily accorded the jury in the sexual delinquency hearing. Much more is involved than simply determining whether this defendant is the

---

[10] *Id.* at 417. The Court concluded that MCL 767.61a is different from a simple penalty enhancement and reflects a "legislative intent to construe sexual delinquency as a separate, alternate form of sentencing" designed for the penalization and rehabilitation of those determined to be sexually delinquent. *Id.* at 418-421.

[11] *Id.* at 422. In imposing this requirement, the *Helzer* Court acknowledged that MCL 767.61a does *not* explicitly provide for convictions by separate juries. Rather, the Court held that "a separate hearing and record [was] directed by clear implication." *Id.* at 419 n 13.

[12] *Id.* at 422-423.

5

person convicted of specific prior offenses. Indeed, acts not necessarily resulting in criminal convictions may be considered under the statute. See MCL 750.10a; MSA 28.200(1). Furthermore, the definition of a sexually delinquent person allows, and in fact must depend upon, consideration of the prior principal sexual offense. Consequently, we find the possibility too real that a jury which only shortly before had found defendant guilty beyond a reasonable doubt on the principal sexual offense might without responsible deliberation conclude he was also a sexually delinquent person. In short, the likelihood of an automatic conviction in this subsequent proceeding requires us to order a separate jury.[13]

In sum, the Court concluded that "the decision to empanel a separate jury should not be left to the discretion of the trial judge."[14] Instead, unless a defendant waives a second jury, *Helzer* requires "that a second jury be provided in every case to decide the sexual delinquency charge" and that the jury should be empaneled immediately following the conviction on the principal charge.[15]

## IV. ANALYSIS

We take this opportunity to revisit the scope of this Court's decision in *Helzer* in light of what the plain language of MCL 767.61a requires. When interpreting a statute,

---

[13] *Id.* at 423-424.

[14] *Id.* at 424.

[15] *Id.* In addition, the Court emphasized that

no reference to the sexual delinquency charge should be made to the jury trying the principal charge. Given the provision for separate juries, absolutely no need remains to acquaint the jury hearing the principal charge with the possible subsequent conviction of defendant as a sexually delinquent person. Discovery during trial of the principal charge that the jury hearing that case has learned of the sexual delinquency charge will henceforth be grounds for mistrial on the principal charge or reversible error on appeal. The two charges must be tried separately. Basic fairness to defendant requires this holding. [*Id.* at 426.]

6

we seek to "ascertain and give effect to the intent of the Legislature."[16]  We begin by examining the language of the statute itself; "[i]f the language is clear and unambiguous, 'no further construction is necessary or allowed to expand what the Legislature clearly intended to cover.'"[17]

On the basis of the language of MCL 767.61a, we hold that separate juries are not necessarily required when a criminal defendant is charged with being a sexual delinquent in addition to another sexual offense.  MCL 767.61a provides in full:

> In any prosecution for an offense committed by a sexually delinquent person for which may be imposed an alternate sentence to imprisonment for an indeterminate term, the minimum of which is 1 day and the maximum of which is life, the indictment shall charge the offense and may also charge that the defendant was, at the time said offense was committed, a sexually delinquent person.  In every such prosecution the people may produce expert testimony and the court shall provide expert testimony for any indigent accused at his request.  In the event the accused shall plead guilty to both charges in such indictment, the court in addition to the investigation provided for in [MCL 768.35], and before sentencing the accused, shall conduct an examination of witnesses relative to the sexual delinquency of such person and may call on psychiatric and expert testimony.  All testimony taken at such examination shall be taken in open court and a typewritten transcript or copy thereof, certified by the court reporter taking the same, shall be placed in the file of the case in the office of the county clerk.  Upon a verdict of guilty to the first charge or to both charges or upon a plea of guilty to the first charge or to both charges the court may impose any punishment provided by law for such offense.

Nowhere in MCL 767.61a does the Legislature require that a jury separate from the one convicting a defendant of an underlying sexual offense determine whether the defendant

---

[16] *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003).

[17] *Id.*, quoting *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002).

is also a sexually delinquent person. Given the plain language of this statute, we believe that the *Helzer* Court erroneously fashioned a mandatory prophylactic procedure when the text of the statute neither explicitly nor implicitly requires it.

To the contrary, the text of the statute affirmatively demonstrates that a separate jury is not required when a defendant is charged as a sexually delinquent person. For example, the statute provides that "the indictment shall charge the offense and *may also charge* that the defendant was, at the time said offense was committed, a sexually delinquent person."[18] More important, the statute also provides that "[u]pon *a* verdict of guilty to the first charge *or to both charges* or upon *a* plea of guilty to the first charge *or to both charges* the court may impose any punishment provided by law for such offense."[19] This statutory language contemplates that a defendant may be charged and tried in one action for both sexual delinquency and the underlying sexual offense. Moreover, MCL 767.61a *only* calls for a separate hearing in regards to sexual delinquency "[i]n the event the accused shall plead guilty . . . ." Nowhere, explicitly or implicitly, does any statutory language indicate that separate juries are required in order to proceed with the charges. As we have stated previously, when interpreting statutes, "a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself."[20] Although our

---

[18] MCL 767.61a (emphasis added).

[19] *Id.* (emphasis added).

[20] *Davis*, 468 Mich at 79 (quotation marks and citation omitted).

predecessors on the *Helzer* Court found the need to create a rule compelling separate juries, there is no statutory basis for it.

Nor do we believe that *Helzer*'s policy justifications demand such a requirement. The *Helzer* Court was first concerned with the potential for prejudice in having the same jury decide both charges. However, such potential could be said to be present *any* time a prosecutor charges a defendant with more than one offense. Courts cannot predict with perfect accuracy whether allowing particular types of related charges to be tried in the same proceeding will prejudice a defendant—and this is true regardless of whether the joinder concerns charges of sexual delinquency or any other related crimes. So too may it be said that "the potential for prejudice is inescapable"[21] when any related crimes are tried together. Simply because the potential for prejudice exists or because charges of sexual delinquency are unique in nature does not require separate trials in all instances regardless of the individual circumstances. Perhaps cases involving charges of sexual delinquency will need to be tried before separate juries at a higher rate than other crimes, but this does not necessitate a special rule applicable to *all* cases involving charges of sexual delinquency, particularly those in which indications of prejudice do not exist.

Moreover, we note that *Helzer*'s concern regarding the high potential for automatic conviction if the same jury is allowed to hear both charges—and in the process hear evidence of a defendant's history of sexual misconduct—is not very compelling when such evidence can be, and often is, admitted anyway under the Michigan Rules of

---

[21] *Helzer*, 404 Mich at 423.

9

Evidence or the doctrine of chances. Specifically, MRE 404(b) provides that evidence of other "crimes, wrongs, or acts" may be admissible in order to prove a defendant's motive, intent, preparation, scheme, plan, system of doing an act, or absence of mistake or accident, among other purposes. This "other acts" evidence need not be evidence of acts that resulted in criminal convictions. As this case demonstrates, the evidentiary rule provides a basis for admitting evidence of a defendant's prior sexual offenses.[22] In addition, Michigan has long recognized the doctrine of chances, which provides that rare or unusual events that occur frequently in relation to a single person are less likely to have an innocent explanation and more likely to demonstrate the probability of an *actus reus*.[23] In certain cases, this doctrine also would permit evidence of a defendant's past

---

[22] This case presents a good example of when MRE 404(b) evidence may properly be used for non-character based purposes given that defendant denied that he exposed himself and additionally argued that, because of groin pain he was experiencing, he had wrapped the area with bandages and thus couldn't have exposed himself. Indeed, the prosecutor in this case was allowed to elicit evidence of two of defendant's prior offenses. Additionally, defendant *admitted* his prior felony convictions, testifying that although he was "extremely embarrassed" about them, they showed how he had accepted responsibility in the past and would do so in this case if he were not otherwise innocent.

[23] See, e.g., *People v Mardlin*, 487 Mich 609, 616-619; 790 NW2d 607 (2010); *People v VanderVliet*, 444 Mich 52, 79-81; 508 NW2d 114 (1993); *People v Crawford*, 458 Mich 376, 392-397; 582 NW2d 785 (1998). The doctrine of chances creates a non-character basis for the admission of evidence of other acts when the other acts are related to the offense charged in such a way as to make it objectively improbable that all the acts were accidental and probable that at least one of them was the result of an *actus reus*. Rather than relying on the subjective character of the defendant, it relies on the objective improbability of so many accidental or unexplained events of a similar nature befalling one individual. See Imwinkelried, 1 Uncharged Misconduct Evidence (rev ed), § 4:03.

Just as MRE 404(b) evidence may be used in this case to demonstrate defendant's intent, motive, or other non-character based purpose for exposing himself, the facts here

10

sexual misconduct to come before a jury. Accordingly, *Helzer*'s rule mandating separate juries, however well-intentioned, does not take into account the practical reality that evidence of a defendant's history of sexual misbehavior will often come before the jury even when the charges are severed. This reality undermines *Helzer*'s policy rationale because, as we explained in *People v Williams*, "[j]oinder of . . . other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial."[24] Limiting instructions are the classic means by which trial courts direct juries to consider certain evidence for its proper purpose only. There is no indication that a proper limiting instruction would be any less appropriate or effective in this type of case.

The *Helzer* Court was further concerned that a jury deciding both charges might conclude without "responsible deliberation" that a defendant is a sexually delinquent person—in other words, that there is a high likelihood of "automatic conviction."[25] However, requiring separate juries would do little to avoid prejudice in this regard. First,

---

also seem to present a particularly appropriate situation in which to properly employ the doctrine of chances. Defendant argued in particular that he did not intend to expose himself, or was not physically capable of exposing himself, in the instant case. This claim of a lack of intent or impossibility is belied by defendant's repeated convictions of similar crimes. Defendant's history of similar sexual deviancy demonstrates an objective likelihood of an *actus reus in this case* based on reasonable probabilities. Thus, because this evidence is likely *otherwise admissible* for proper purposes under MRE 404(b) or the doctrine of chances, the *Helzer* Court's concern about *unfair* prejudice from trying the charges before a single jury is significantly diminished.

[24] *People v Williams*, 483 Mich 226, 237; 769 NW2d 605 (2009) (quotation marks and citation omitted).

[25] *Helzer*, 404 Mich at 423-424.

11

juries are presumed to follow the instructions of a trial court,[26] and thus trial courts have the responsibility to ensure that juries are fully informed about the applicable law and the necessary, responsible deliberation that they should undertake before convicting a defendant. Second, nothing in the blanket requirement of separate juries ensures that a second jury would deliberate any more carefully than the first. Moreover, the second jury is likely to be provided the same type of evidence and information as the first jury considered.[27] Any disadvantage experienced by a defendant arising out of the fact that he was recently convicted of a sexually based crime is a natural and appropriate consequence of such a conviction and not *unfairly* prejudicial.

Finally, we note that Michigan's court rules contemplate that decisions regarding joint or severed trials for related charges lie firmly within the discretion of trial courts. In particular, MCR 6.120(B) provides:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in [MCR 6.120(C)], the court may join offenses charged in two or more informations or indictments against a single defendant, *or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.*
>
> (1) *Joinder is appropriate if the offenses are related.* For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or

---

[26] See, e.g., *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

[27] Indeed, as the *Helzer* Court stated, the definition of "sexually delinquent person" "depend[s] upon" consideration of the principal sexual offense. *Helzer*, 404 Mich at 423.

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, *the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence*, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.[28]

We believe that this rule provides the proper framework for courts to analyze whether separate juries are required when sexual delinquency is charged in addition to a primary sexual offense. That is, if "a fair determination of defendant's guilt or innocence of each offense" would require separate juries, trial courts may order separate juries either sua sponte or on the motion of one of the parties. In accordance with the rationale supporting the *Helzer* Court's original holding, the "potential for confusion or prejudice" in particular may provide a sufficient basis for a trial court's exercise of its discretion to order separate juries when a charge of sexual delinquency is involved. When that potential does not exist, however, separate juries need not be empaneled in order to consider separately the charges against a defendant.

## V. STARE DECISIS

Although we conclude that *Helzer* wrongly created a rule mandating bifurcated trials when a defendant is charged with being a sexually delinquent person in addition to

---

[28] Emphasis added. MCR 6.120(C) provides that "[o]n the defendant's motion, the court must sever for separate trials offenses that are not related as defined in [MCR 6.120(B)(1)]."

13

an underlying criminal sexual offense, that does not end our inquiry regarding whether *Helzer* should be overruled. In *Robinson v Detroit*, we set forth a multifactored test that this Court applies before overruling a precedent in order to provide respectful consideration to the cases decided by our predecessors.[29] "The first question, of course, should be whether the earlier decision was wrongly decided."[30] However, "the mere fact that an earlier case was wrongly decided does not mean overruling it is invariably appropriate."[31] Rather, "[c]ourts should also review whether the decision at issue defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision."[32] We conclude that these criteria generally weigh in favor of overruling *Helzer*.

First, we examine whether the *Helzer* rule of mandatory bifurcation defies "practical workability." Although we conclude that the *Helzer* rule is not practically unworkable, it does impose unnecessary enormous costs on the judicial system because it requires empaneling two juries when the need for this has not been specifically determined. As noted, in accordance with Michigan's court rules, Michigan courts are well able to accommodate joined or bifurcated trials as the circumstances of an individual case require.

---

[29] *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).

[30] *Id.* at 464.

[31] *Id.* at 465.

[32] *Id.* at 464.

14

Second, and most important, regarding reliance interests, this Court asks "whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations. It is in practice a prudential judgment for a court."[33] We conclude that *Helzer* has not become so embedded in, or fundamental to, society's general expectations that overruling it would produce significant dislocations. Indeed, it cannot fairly be said that citizens contemplate criminal activity in reliance on the particular procedural rule implicated in this case.[34] Nor do we believe that overruling *Helzer* would work a hardship on the criminal justice system or affect the manner in which determinations of guilt are fairly and efficiently made. To the extent that the bench and bar are aware of the rule of mandatory bifurcation set forth in *Helzer*, given Michigan's well-settled rules regarding joinder and severance, overruling *Helzer* in a prospective manner is unlikely to upset their reliance interests.

Moreover, as we noted in *Robinson*, when discussing reliance interests in the context of statutory law, the words of a statute themselves are of paramount importance because "it is to the words of the statute itself that a citizen first looks for guidance in

---

[33] *Id.* at 466.

[34] See *People v Hawthorne*, 474 Mich 174, 183-184; 713 NW2d 724 (2006); *Robinson*, 462 Mich at 466-467 ("Such after-the-fact awareness does not rise to the level of a reliance interest because to have reliance the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event. Such a situation does not exist here.").

15

directing his actions."[35]  As we have discussed, we believe that the *Helzer* Court failed to accord full meaning to the words of MCL 767.61a.  In particular, that statute contemplates that a single trier of fact may try both a charge of sexual delinquency and an underlying criminal sexual offense in appropriate cases.  Absent the holding in *Helzer*, no person reviewing the words of this statute would expect an automatic right to separate juries when charged as being a sexually delinquent person.

Finally, we examine whether intermediate changes in the law or facts no longer justify the *Helzer* decision.  Because *Helzer* created a policy-based, prophylactic rule, its continued validity is only supported to the extent that legal realities require it.  Yet, as discussed at length earlier, the policy justifications for *Helzer* are largely undercut by the application of the rules of evidence and various legal doctrines in a trial setting.[36]  Most important, by allowing for bifurcated trials in appropriate cases, Michigan's court rules otherwise provide an adequate means of protecting against the harms identified in *Helzer*.  Accordingly, there is no compelling policy justification that supports retaining *Helzer*'s rule of mandatory bifurcation.

Having reviewed these factors and considering the deference that must be accorded to the exact words chosen by the Legislature in MCL 767.61a, we conclude that the portion of *Helzer* requiring bifurcated trials should be overruled.

---

[35] *Robinson*, 462 Mich at 467.

[36] We note in particular that the Michigan Rules of Evidence were not yet effective when *Helzer* was briefed and argued, that they had only recently gone into effect when *Helzer* was decided, and that *Helzer* contains no discussion of MRE 404(b).

## VI. CONCLUSION

We hold that separate juries are not necessarily required when a criminal defendant is charged with a sexual offense as well as with being a sexually delinquent person. To the extent that *Helzer* held contrarily, we overrule that portion of the decision and direct trial courts to exercise their discretion consistently with Michigan's court rules when determining whether separate jury trials are required in a given case.[37]

Accordingly, the prosecutor's application for leave to appeal is granted, the trial court's order granting defendant a new trial is vacated, defendant's conviction is reinstated, and this case is remanded to the Genesee Circuit Court for further proceedings consistent with this opinion.[38]

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra

---

[37] We emphasize that we overrule *Helzer* in part, and only in regard to *Helzer*'s creation of a rule of mandatory bifurcation. The additional issues addressed in the *Helzer* decision are not at issue in this case.

[38] Because we vacate the trial court's order, our holding regarding the *Helzer* issue is dispositive of the prosecutor's appeal, and therefore we need not consider the prosecution's alternative waiver argument or whether any alleged error was harmless.

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

No. 140153

ANTHONY JAMES BREIDENBACH,

      Defendant-Appellee.

---

CAVANAGH, J.

I concur in the result only.

                                   Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                           No. 140153

ANTHONY JAMES BREIDENBACH,

      Defendant-Appellee.

_____

MARILYN KELLY, J. (*concurring in part and dissenting in part*).

I concur in the result reached by the majority. However, I write separately to express my disagreement with several parts of the majority opinion.

I disagree with the partial overruling of *People v Helzer*[1] because it is unnecessary. Defendant forfeited his right to avail himself of the *Helzer* rule by failing to assert it at trial. Forfeited issues are reviewed for plain error.[2] We have held that reversal for plain error is warranted in two situations. One is when the plain, forfeited error resulted in the conviction of an actually innocent defendant.[3] The other is when the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."[4] Neither situation exists in this case.

----

[1] *People v Helzer*, 404 Mich 410; 273 NW2d 44 (1978).

[2] See, e.g., *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004).

[3] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[4] *Id.*, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks omitted).

The majority correctly notes that defendant testified about his prior felony convictions at trial. He also advanced as fact that he had accepted responsibility for those offenses to show that he would not have committed the indecent exposure alleged in this case. Moreover, many of his prior offenses would have been admissible under MRE 404(b) in a trial for the indecent exposure charge.

However, the testimony of defendant's parole officer about defendant's lengthy criminal history would have been admissible in the sexual delinquency case only to establish the elements of that offense. The prejudice inherent in admitting a defendant's entire criminal history at a trial on both charges when it is relevant only to prove the sexual delinquency charge is significant.

Under the facts of this case, I cannot conclude that the admission of defendant's criminal history constituted plain error warranting reversal. Thus, I agree with the majority's decision to reinstate defendant's conviction, but would have decided this case on the narrow grounds previously discussed.

Because the majority reaches the *Helzer* rule and overrules it in part, I must also explain my disagreement with some of its reasoning. First, I would not rely on the doctrine of chances. As I explained in my dissenting opinion in *People v Mardlin*, "[t]he decision whether to apply the doctrine of chances is made on a case-by-case basis considering the particular facts of the case."[5] Thus, application of the doctrine is appropriate only if the facts of the case support it. The majority has not shown that they

---

[5] *People v Mardlin*, 487 Mich 609, 641; 790 NW2d 607 (2010) (KELLY, C.J., dissenting).

2

do, though it notes that only "[i]n certain cases" would the doctrine permit evidence of a defendant's past sexual misconduct to come before a jury.[6]

I also write separately to address the majority's supposition that "[p]erhaps cases involving charges of sexual delinquency will need to be tried before separate juries at a higher rate than other crimes, but this does not necessitate a special rule applicable to *all* cases involving charges of sexual delinquency, particularly those in which indications of prejudice do not exist."[7] I believe that it is highly likely that such cases *will* need to be tried before separate juries more often than cases involving other crimes.

The potential for prejudice is greatly increased in cases in which the prosecution must prove the elements of an underlying sexual offense and the repetitive nature of the defendant's conduct.[8] This is so because the evidence necessary to prove the individual charges is different, and evidence relevant to prove one charge is not necessarily relevant or admissible to prove the other. Moreover, such evidence may be highly prejudicial.

I would further caution trial courts that nothing in the Court's ruling today undermines *Helzer*'s persuasive reasoning for bifurcating jury trials as a discretionary matter. Henceforth, trial courts should carefully consider the potential for prejudice in

---

[6] *Ante* at 10-11.

[7] *Ante* at 9.

[8] Thus, I agree with the *Helzer* Court that "a jury which only shortly before had found defendant guilty beyond a reasonable doubt on the principal sexual offense might without responsible deliberation conclude he was also a sexually delinquent person." *Helzer*, 404 Mich at 423.

3

such cases and whether a defendant can get a "fair determination" of his or her guilt or innocence "*of each offense*."[9]

I also disavow part of the majority's stare decisis discussion. In its analysis of the reliance interest, the majority states that "citizens [do not] contemplate criminal activity in reliance on the particular procedural rule implicated in this case."[10] Hence, the majority asserts that reliance interests can never be implicated by caselaw interpreting a criminal statute because only criminals rely on that law. As I have previously explained, this statement is incorrect.[11]

Moreover, reliance interests are supposedly not implicated here simply because "the *Helzer* Court failed to accord full meaning to the words of MCL 767.61a."[12] In sum, a case that the majority believes erroneously interpreted a statute does not generate reliance because it misconstrued the statutory language. I continue to believe that such a statement is too facile an analysis of the extent to which there is a reliance interest in a given case.[13]

---

[9] MCR 6.120(B) (emphasis added).

[10] *Ante* at 15.

[11] *People v Gardner*, 482 Mich 41, 83 n 11; 753 NW2d 78 (2008) (KELLY, J., dissenting) (explaining that "criminals are not the only people who rely on criminal statutes").

[12] *Ante* at 16.

[13] See, e.g., *Gardner*, 482 Mich at 82-83 (KELLY, J., dissenting) ("[T]he majority often merges the reliance prong with the initial determination of whether the precedent was correctly decided. This last point effectively eviscerates the reliance prong of [the analysis of *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000)], because a 'wrong' decision supposedly can never generate reliance.").

For these reasons, I concur in the result reached by the majority opinion but dissent from much of its analysis.


Marilyn Kelly

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                                                          No. 140153

ANTHONY JAMES BREIDENBACH,

      Defendant-Appellee.

_____

HATHAWAY, J. (*concurring in part and dissenting in part*).

I concur with the majority that the trial court's order granting defendant a new trial should be vacated and that defendant's conviction should be reinstated.  However, I reach this conclusion because defendant has forfeited his right to separately empaneled juries in the matter before us.  As the majority acknowledges, defendant was charged with "indecent exposure as a sexually delinquent person"[1] and tried before one jury *without objection*.  Under the circumstances presented in this case, defendant forfeited his right to separately empaneled juries.  Accordingly, I respectfully dissent from the majority's decision to partially overrule *People v Helzer*, 404 Mich 410; 273 NW2d 44 (1978), which has served as precedent for more than 30 years in this state, because it is unnecessary to reach the issue whether *Helzer* was correctly decided given that defendant forfeited the right to trial by separate juries.

_____

[1] MCL 750.335a (indecent exposure); MCL 767.61a (sexual delinquency).

# I. ANALYSIS

At issue is whether defendant was entitled to separately empaneled juries. The defendant's claim of error was based on *Helzer*, which established a right to be tried by two separate juries when charged with indecent exposure as a sexually delinquent person pursuant to MCL 750.335a and MCL 767.61a. According to the record, defendant made no request for bifurcation before trial, nor did he object to empaneling a single jury either before or during the trial. The objection was not raised until after the conviction and sentence and after an appeal had been filed in the Court of Appeals. The prosecution argues that the issue has been waived or forfeited given these circumstances. While the majority holds that it need not consider the prosecution's argument, I respectfully disagree. Under the circumstances presented in this case, I conclude that defendant forfeited the right to trial by separate juries and, consequently, there is no need to reach the question whether *Helzer* was correctly decided.

To determine whether the alleged error was forfeited, we first examine the right claimed by defendant. While defendant argues that he was denied the right to a jury trial, which cannot be waived without meeting the procedural requirements of MCR 6.402, I find defendant's argument without merit. Defendant was not denied the right to a jury trial; to the contrary, defendant was tried by a jury in this case. Defendant's claim of error involves the right to be tried by *separate* juries, in order to exclude possible prejudice resulting from the same jury hearing certain evidence. However, the right to separate juries found in *Helzer* was not based on any federal or state constitutional right; rather, the right found in *Helzer* was based on the procedural language contained in MCL

2

767.61a.[2]  Further, *Helzer* acknowledged that the right to separate juries is subject to waiver: "[*u*]*nless waived by the defendant*, we shall require that a second jury be provided in every case to decide the sexual delinquency charge."[3]  Thus, defendant's appeal in the Court of Appeals involved a nonconstitutional, unpreserved error.  This category of error must be reviewed in accordance with *People v Carines*.[4]

The test set forth in *Carines* for reversing a conviction on the basis of a nonconstitutional, unpreserved error requires that the defendant show a plain error that affected substantial rights.[5]  Further, "[t]he reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."[6]  Based on the violation of the right to separate juries set forth in *Helzer*, defendant did demonstrate a plain error.  The error, however, at most resulted in the jury hearing and considering evidence that was potentially prejudicial.  "[A] fair trial does not include the right to exclude relevant and competent evidence."[7]  Therefore, the fact that the jury heard testimony concerning defendant's past convictions did not demonstrate prejudice affecting his substantial rights.

---

[2] See also *Spencer v Texas*, 385 US 554, 567-569; 87 S Ct 648; 17 L Ed 2d 606 (1967) (holding that there is no federal constitutional right to a bifurcated criminal trial).

[3] *Helzer*, 404 Mich at 424.

[4] *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999).

[5] *Id*. at 763-764.

[6] *Id*. at 774.

[7] *Zafiro v United States*, 506 US 534, 540; 113 S Ct 933; 122 L Ed 2d 317 (1993).

3

Even assuming that excluding this evidence implicated a substantial right, there was no showing that defendant in this case was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. At trial, defendant freely admitted that he committed all the prior acts. Defendant discussed his prior convictions in his opening statement. All the prior-acts testimony was entered into evidence without objection. Defendant admitted that he was in the bookstore and had conversations with the victim but denied that he exposed himself to this victim. Apart from this denial, which the jury evidently did not believe, the record does not suggest that defendant was actually innocent or that the integrity or public reputation of the proceedings was seriously affected.

Additionally, while *Helzer* discussed the right to separate juries in the context of fairness, in all situations in which severance is mandatory, the court rules clearly place the burden on the defendant to request the relief by motion.[8] I see no reason to treat the *Helzer* right to severed trials differently from any other situation in which severance is mandatory. Further, there is nothing unfair in requiring a defendant to do so. The burden is on a defendant to request separate juries, and if a defendant fails to do so, the right is subject to the unpreserved-forfeiture analysis set forth in *Carines*. Given the

---

[8] See, e.g., MCR 6.120(C), which provides: "On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in [MCR 6.120(B)(1)]"; MCR 6.121(B), which provides: "On a defendant's motion, the court must sever offenses that are not related as defined in MCR 6.120(B)"; and MCR 6.121(C), which provides: "On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant."

circumstances of this case, there is nothing in the record to reflect that defendant was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings that resulted in his conviction.

Accordingly, I must respectfully dissent from the majority's decision to overrule *Helzer*. *Helzer* has served as precedent in this state for more than 30 years. Given that the defendant forfeited the *Helzer* issue, there is no reason to overrule *Helzer*, even in part, in the case before us. Overruling precedent may be warranted in certain circumstances, but overruling 30-year-old precedent should not be done without thoughtful consideration of the principle of stare decisis. Any stare decisis analysis must focus on the individual case and the reasons for overruling precedent. While the majority finds that the *Robinson*[9] factors have been met in this instance, I disagree. The majority's reasons for overruling 30-year-old precedent are paramount to any articulated test, and given that the issue has been forfeited, there is no reason to partially overrule *Helzer* in the case before us.

## II. CONCLUSION

I concur with the majority that the order granting defendant a new trial should be vacated and that defendant's conviction should be reinstated, although I reach this result on the ground that defendant forfeited his right to separately empaneled juries. Accordingly, I respectfully dissent from the majority's decision to partially overrule

---

[9] *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000).

*Helzer*, which has served as precedent for more than 30 years in this state, because it is unnecessary to reach the issue whether *Helzer* was correctly decided.

Diane M. Hathaway